KORNER ROOFING & SHEET METAL CO., PLAINTIFF-APPELLEE, *v.* SMYLIE BROTHERS, INC., DEFENDANT-APPELLANT.

Ohio Appeals, Eighth District, Cuyahoga County.

No. 26269—Decided March 14, 1963.

*Messrs. Johnson, Whitmer & Sayre,* for plaintiff-appellee.
*Mr. Max T. Katz,* for defendant-appellant.

ARTL, J. This is an appeal on questions of law from a judgment of the Municipal Court of Cleveland rendered in favor of the plaintiff upon its petition and in favor of the plaintiff upon defendant's cross-petition.

The appellant's assignments of error are five in number and are as follows:

1. The Court erred in its Conclusions of law "that Plaintiff, by a preponderance of the evidence, was required to install only those items of sheet metal work set forth and enumerated in the Defendant's Exhibit 3."

2. The Court erred in referring to two documents whose terms vary as constituting an offer and an acceptance.

3. The Court erred in overruling defendant's motions submitted following all of the testimony and evidence offered by the plaintiff corporation.

4. The Court erred in disregarding defendant's evidence as to the additional costs to him of the job resulting from plaintiff's refusal to perform, under the contract.

5. The verdict is contrary to law, and contrary to the weight of the evidence.

The parties will be referred to herein as plaintiff and defendant as in the trial court. The plaintiff, a corporation, filed its action upon an account, in the short form, based upon an alleged contract with the defendant to furnish certain sheet metal work in the construction of the Bay Village High School for a price of $19,257.00. The account as set forth in its petition included extras in the amount of $142.65 and acknowledges receipt of payment in the amount of $17,151.30 and prays for judgment in the sum of $2248.35, with interest at 6% from April 13, 1960.

The defendant filed its answer and counterclaim. By its answer, defendant, a corporation, denies that it owes plaintiff the sum prayed for, or any other sum whatsoever, and further denies each and every allegation contained in the petition not specifically admitted to be true.

For its counterclaim, defendant claims there is due it on an account arising out of the Bay Village High School contract the sum of $2111.30, together with a yet undetermined amount by way of credit, as per account attached and prays for judgment accordingly.

The factual situation developed in the record indicates that the plaintiff corporation, a roofing and sheet metal contractor, received an invitation to bid upon the sheet metal work in connection with the construction of the Bay Village Junior High School and had several phone conversations with the defendant who subsequently became the prime contractor for this construction. A quotation and a revised quotation outlining the work to be done were forwarded to the defendant. (Plaintiff's Exhibit C 1; Defendant's Exhibit 2; Defendant's Exhibit 3.) Defendant, having submitted its total bid to the awarding authority, knew on March 31, 1959, that it was the low bidder; the defendant received its contract for the job and on May 20, 1959, forwarded to the plaintiff its purchase order setting forth the contract price and authorized the plaintiff to proceed. (Plaintiff's Exhibit C.)

Plaintiff proceeded under its contract, billed periodically for material and services rendered, and on August 31, 1960, submitted its final bill for the balance due on the contract. (Plaintiff's Exhibit B.) Construction was completed and the building accepted in 1961.

Plaintiff's Exhibit C 1, its revised quotation, is as follows:

"We hereby propose to furnish the following Sheet Metal Work for Bay Jr. High School, Bay Village, Ohio

"Our bid consists of the following items:

Furnish and install all required sheet metal ducts.

Furnish and install the required grilles, registers and ceiling outlets.

Furnish and install the required louvers.

Furnish and install the required fire dampers.

Furnish and install the required sound insulation.

Furnish and install the required boiler breeching.

"Install only the required book cases.

"Our charge for the above mentioned items ....$16,828.00
                                                                              2,129
                                                                        _____
                                                                          $19,257
                                                                        _____
                                                                          $20,257"

Plaintiff's Exhibit C. Defendant's purchase order to the plaintiff, is as follows:

"To furnish and install all sheetmetal work, as per plans and specifications for Bay Village School.

"Subject to Engineer approval

"Price                                               $19,257.00"

The dispute involved herein develops from a claim by the defendant that plaintiff failed and refused to fulfill its obligation under its contract to install fin tubes, backings and covers, and, therefore, defendant refused to pay the balance of the contract price. The defendant's claim is also that its purchase order of May 20, 1959, bound the plaintiff to install all sheet metal work indicated on the plans and specifications, including the fin tubes, backings and covers, since the plaintiff's quotations did not exclude this work.

The plaintiff claims that its contract encompassed only

those items set forth in its quotations, and that to have been included under its contract, its quotation would have had to indicate, for practical reasons and by custom, the installation of fin tubes, backings and covers on a per foot basis.

The trial court set forth its findings of fact and conclusions of law and entered judgment accordingly. The essence of the court's finding is as follows:

### "CONCLUSIONS OF LAW

"After hearing all the testimony, some of which was not pertinent to the issue and was disregarded by the court, it is the opinion of the court that the plaintiff by preponderance of the evidence, was required to install only those items of sheet metal work set forth and enumerated in the defendant's Exhibit 3 and that there is due the plaintiff from the defendant the sum of $2234.79 (some deduction from the amount prayed for was allowed by stipulation of the parties).

"Judgment is therefore rendered for plaintiff on its petition in the sum of $2234.79 and costs and judgment for the plaintiff on the defendant's counterclaim."

The record discloses that these two corporations were not strangers to one another. They have done business together in the past. We note further that the negotiations on behalf of the plaintiff, including the estimating of the job, the issuance of the respective quotations, and conversations relative thereto were handled by the salesman and estimator of the plaintiff, a Mr. William Bartelheim.

It appears from the record that plaintiff was in possession of the plans and specifications for this High School structure at the time of its preparation of each of its quotations.

It must have been obvious to both plaintiff and the defendant, from their knowledge of the requirements of the plans and specifications, that on the one hand plaintiff's quotations made no reference to the fin tubes, while on the other hand defendant's purchase order provided that plaintiff was "to furnish and install all sheet metal work, as per plans and specifications for Bay Village School," and that fin tube work is indicated by such plans and specifications, and that there was a variance.

Mr. Korner, President of the plaintiff corporation, in his

testimony acknowledged that the fin tube work appeared on the plans and specifications; but denied that when they agreed to do the work under what he considered to be a contract, that is, the purchase order, they did not agree to do the fin tube work, stating that for the last ten years in Cleveland, "such work is never part of the basic contract but is the subject of a bid on a separate per foot basis." He stated further in response to a question:

"Q. C states that you will install all sheet metal work, all sheet metal work?

"A. All sheet metal work in accordance with the area practice or—what do you call it? Custom, very definitely it does say that."

When asked whether after the proposal was submitted to defendant they made known to defendant that the fin tube sheeting was a separate item entirely, he acknowledged that they did not do so until defendant advised them that they were to install it, at which time "we advised him that this was not our contract and we didn't intend to install it; and didn't install it."

So that it becomes apparent that the quotations as submitted by the plaintiff and the purchase order received by the plaintiff from defendant are at variance with one another, unless the proposals were controlled by what plaintiff contends is a custom, or practice, in the area, governing the fin tube work.

The pleadings in this case do not plead the existence of any custom or usage in the area. The trial court did permit testimony involving same. The fact that custom is not pleaded was not raised in the trial.

The plaintiff, seeking to establish the existence of such a custom, produced a witness (Mr. Boehm) employee of a firm of sheet metal contractors whose function is estimating, detailing and designing. His work as an estimator has gone on since 1942. He expressed his familiarity with a custom to bid the "fin tube work" separately, stating two reasons: (1) the contractor does not know exactly how many feet are involved, and (2) the type of fin tube cover will vary, and, therefore, it is necessary to quote a unit price on it. He stated the practice was uniform among sheet metal contractors. "We quote a

figure on fin tube work only if requested and then quote a per foot price.''

As to the duration of the custom spoken of, the witness stated that it has existed since the jurisdictional dispute was resolved and the sheet metal workers were awarded the right to put them on, sometime around 1957, and did exist in 1958, 1959, 1960 and is still in existence to date.

The witness, in response to a hypothetical question based upon the quotations submitted to the defendant and the purchase order issued to the plaintiff as to whether or not in his opinion the purchase order would include the fin tube work, stated it would not include it.

Another witness (a Mr. Pennell), competent by reason of his employment, training and experience, testified substantially the same as the preceding witness as to the custom of the trade and expressed a similar opinion as to the exclusion of the fin tube work under the facts and circumstances of this case. He likewise confirmed the fact that the jurisdictional dispute marked the time when fin tube work was awarded to the sheet metal workers.

Aside from the question as to the necessity for pleading the existence of a custom, we must note that before a custom is established so as to become in the trade a part of a contract certain elements must be shown to exist.

Speaking generally on the subject of Essential Elements, 54 Ohio Jurisprudence (2d), 445, Usages and Customs, Section 3, states:

''In order that a custom may have the effect of law concerning the particular subject to which it relates, it must have notoriety, certainty and uniformity, reasonableness, continuance over a period of time and legality.''

And at Section 11 of the same authority, we find it said,

''An essential element of every valid custom is that it be known to the parties involved, or, be so general and well established that knowledge will be presumed or as is sometimes said, the facts must be such that the parties should have known it.'' and

''The element of knowledge is essential whether the custom affects contracts or torts.''

Mr. Leon Smylie, President of the defendant corporation, in business 17 years, testified that his dealings with plaintiff were with Bill Bartelheim; that there was conversation with Mr. Bartelheim about the work to be performed by plaintiff; that they discussed the fin tube covers; that he did not say that they would not install them; that it would not have been possible to submit a bid for this building if he did not know who was to do the fin tube work; that the plaintiff had done the Federal Department Store job for the defendant prior to the one in question; that for that job they had submitted a general outline proposal and one price; that they had not in the general outline included the fin tube covers; that they had installed them and had made no extra charge for that work; that the manner of proposal had been the same for both jobs; that it has been his experience that when a sheet metal contractor does not wish to do certain work for the price he quotes, he lists such exception as an extra; that when plaintiff refused to do this work defendant hired men to do the work of installing the fin tube work and set up a charge showing the cost thereof, and that he had had as many as ten jobs with Bartelheim.

The defendant put on the stand Mr. William Bartelheim who was the salesman and estimator for the plaintiff at the time this transaction was consummated; he has since left plaintiff's employ and is presently in business for himself. He testified that in fixing the amount of the bid on behalf of plaintiff he did not exclude any items to his knowledge; that his original quotation on the suggestion of defendant was too low and thereupon he revised it upward; that he did not make known to the defendant that there would be any exclusion from the plans and specifications; that in making the bids he made no exception to any part of the work; that he acknowledged the sending of quotations (Plaintiff's Exhibit C 1 and Defendant's Exhibit 3), but that they were a general outline but not necessarily all of the work, and that to include every item would be practically impossible; that in 1958 plaintiff did the Federal Department Store job; that defendant's Exhibit 4 was a proposal sent to defendant similar to those sent defendant in this case; that this proposal did not include every item that was to have been or that was installed without extra charge; that the general outline proposals did not call for every item that was to

be done by plaintiff but that they were bound by the plans and specifications; that when he submitted the proposals to the defendant he took into account the doing of the fin tube work and that he had never talked with Mr. Higens who testified that Bartelheim had ordered him not to install the fin tube work. On cross-examination, he testified that he has his own company; that he is a competitor of plaintiff; that he has done some work for the defendant; that in the preparation of the general proposal quotation the fin tube covers do not constitute a major item in most cases; that he could not recall whether in his estimates he figured fin tube covers as a specific item, and that ''we agreed to do all of the sheet metal work and that includes fin tube covers.''

The first and fifth assignments of error urged by appellant and considered together are that the court erred in its conclusion of law that plaintiff by a preponderance of the evidence was required to install only those items of sheet metal work set forth and enumerated in defendant's Exhibit 3 and that the verdict or court's decision is contrary to law and against the weight of the evidence.

Defendant's Exhibit 3 is the revised quotation setting forth the same seven items shown in Plaintiff's Exhibit C-1 shown above. In support of the court's conclusion, the court's finding is that ''Evidence was introduced tending to establish the fact that fin tubes are customarily the function of the sheet metal contractors and are not included in the general contract unless specifically mentioned therein or separately agreed upon.''

The record indicates that there is testimony to the effect that that is a custom or usage in the trade. But is that sufficient to outweigh the testimony of the defense from which it appears that defendant's representative, Mr. Smylie, discussed the matter of fin tube work with Mr. Bartelheim, plaintiff's representative, before the purchase order was issued (this is not denied in the record); that Mr. Bartelheim's quotation proposal did not exclude the fin tube work, which would have been done, if the price was not intended to include same; that the custom of the plaintiff, in its dealings with the defendant, was to perform work called for by the plans and specifications without extra charge although such items of work were not specifi-

cally included in the customary proposal quotations which generally included the major items; and that fin tube work was not classed as a major item?

This custom or course of dealing between plaintiff and defendant, on at least ten jobs, appears to us to be much more convincing than the testimony of a custom or usage in the trade which did not materialize until about one or two years before this job was agreed upon when the jurisdictional dispute was settled.

The jurisdictional dispute involved the question as to which trade union was to do the fin tube work and can add nothing to the determination of this controversy. It merely settled the question that this particular trade, "sheet metal workers," was to do this work rather than some other trade.

We, therefore, conclude that the judgment of the trial court is erroneous as manifestly against the weight of the evidence and is, therefore, reversed.

Having reached the foregoing conclusion, it will not be necessary to consider the other assignments of error.

.Judgment reversed and cause remanded to the trial court for further proceedings according to law.

KOVACHY, P. J., CORRIGAN, J., concur.